City of St. Louis Building Inspector Hershell Wallace. Appellant Wallace appeals the trial court's denial of his summary judgment. Counsel, could you get that mic a little closer to you there and speak up just a little bit. Okay. Thank you. In this case, appellees have claimed that Mr. Wallace violated their Fourth Amendment rights by conducting a building interior inspection of their home on March 5, 2014. Mr. Wallace raises only one point of appeal, one point of error by the trial court, and that is that the district court erred in denying him qualified immunity because it was not clearly established law on March 5, 2014 that a resident's Fourth Amendment rights are violated by a municipal building inspector who conducts an interior inspection after obtaining a resident's signature on a consent-to-inspect form and after informing the residents of the provisions of a city ordinance that provides that the subject or the property could be subject to condemnation unless inspection occurs. On March 5, 2014, Inspector Wallace was dispatched to the appellee's home after a detective with the City of St. Louis Police Department contacted dispatch and advised that he needed a Project 87 inspector at the home to conduct a Project 87 inspection. Project 87 is a program designed to inspect nuisance and problem properties in the City of St. Louis. Frequently, it targets houses that are being used as drug houses. The program has been in existence since the mid-1990s. Inspector Wallace knew when he was dispatched to the appellee's home on March 5, 2014 that a search warrant had been executed at the home by the St. Louis Police Department and the property had been identified by the police as a nuisance property. When you say identified as a nuisance property, that's under the city ordinance, correct? That's correct, Your Honor. So what portion of that ordinance does Wallace point to to say this was a nuisance property? In other words, is there some subsection? What were the features of this particular house that potentially made it a nuisance? Well, the ordinance defines a nuisance property as a property that has conditions, if not complied with, could constitute a fire hazard or threaten the health or safety of the occupants of the structure. In this particular case, Mr. Wallace, when he received the call from dispatch, relied on the police officer's judgment that the house had problems and potential building code violations. So is it limited to building code violations? You said it's commonly applied to or targets what you've termed drug houses. That seems like a different nuisance than a building code violation nuisance. Is there a distinction here that I'm missing? Are they collectively put into the same nuisance category under the ordinance? You're correct, Your Honor, in that the ordinance does not specifically state that the program is targeting nuisance conditions like the existence of guns and drugs at the home or drug sales at the home. But I do believe that that would be a reasonable interpretation of the ordinance by a public official, such as a building official or a municipal code inspector like Mr. Wallace. Mr. Wallace testified in this case that he believes that the police go into the building or the home and they see conditions which could be building code violations, and at that point he's called out to make sure the home is safe. Counsel, does the crux issue here relate to whether or not the occupant that consent is sought from is giving consent voluntarily and whether there's a fact question about the validity of the consent Mr. Wallace relies on? Your Honor, that was the grounds the trial court used based the denial of the qualified immunity. However, on March 5, 2014, there was no clearly established law that would have put Inspector Wallace on notice that using a consent to inspect form in the presence of police and after notifying the resident that their home could be subject to condemnation under the city ordinance. That was not clearly established law. And, in fact, there had been a 2007 district court case. That case was Appel v. the City of St. Louis. And that case dealt with another Project 87 inspection that was conducted by a colleague of Mr. Wallace's. The inspector in that case and Mr. Wallace had worked together for many years. I think in that case the plaintiff didn't say that he was handcuffed, though. Isn't that right? There was no allegation in the Appel case that the... It might be an important distinction even if the case is relevant. Your Honor, I don't think that the handcuffing issue, which remains a fact issue in this case, is an important distinction. What about the presence of armed SWAT officers? Well, it has been held by... Courts have previously held that even someone who's been arrested and is in police custody can give valid consent. So I don't think the handcuffing issue rules out the application of qualified immunity. And in the Appel case, there were very, very similar facts. The inspection, like this inspection, had been initiated by police. In this case, the police submitted a Project 87 nuisance form. Police also accompanied this inspector to the home. And the inspector similarly presented the occupant with a consent to inspect form and advised that the house could be subject to condemnation if inspection was not allowed. In this case, if there are competing views on whether the consent that was given via the signature on the form was voluntary, isn't that a factual dispute? You assume that from Mr. Walker's standpoint, it was, I didn't want to sign it, I was handcuffed, this was not voluntary. And Mr. Wallace says, no, you weren't handcuffed, you voluntarily signed the form. Is that a factual dispute that would take this outside of qualified immunity? Your Honor, I don't believe that that factual dispute precludes the application of Mr. Wallace's qualified immunity. A public official like Mr. Wallace must be on notice that what he is doing violates clearly established law before he is even subjected to suit. The Appel courts very specifically held that, in almost identical circumstances, that an inspector had not violated the Fourth Amendment rights of a homeowner and that a large police presence at a housing inspection is unusual, but that's not sufficiently intimidating to deprive an adult of his ability to get informed, knowledgeable, and voluntary consent. Let me ask this. Mr. Wallace agrees that he did have to get consent, correct? That's correct. Mr. Wallace testified that he understands that he has to get the occupant's, the homeowner, the occupant's consent. So he understood that. I thought that he said, well, I'm going to do it whether I get your consent or not. No, what Mr. Wallace said to Mr. Milbrooks, the resident who signed the consent form, he said that the ordinance permits me to condemn the house until an inspection occurs. Correct. So, given the existence of the Appel case, which involved a municipal building inspector from the city of St. Louis, Mr. Wallace could not have been on notice on March 5th, 2014, that presenting an occupant with a consent to search form and advising of the ordinance and his rights under the ordinance could be a Fourth Amendment violation. The district court, in denying Inspector Wallace's qualified immunity, relied on three Fourth Amendment cases. They relied on the Bustamante case, U.S. v. Chaidez, and Illinois v. Rodriguez. Those three cases, none of them deal with the use of a consent to inspect form. The Bustamante case involved a car stop where consent to search was given verbally. Chaidez involved a defendant who was stopped, signed a consent form, which was written in English, and he later claimed that he had limited ability to understand written English. The Illinois v. Rodriguez case dealt with an entry into an apartment where the police officers were let in by a woman who had keys to the apartment, and they reasonably believed that she held common authority over the premises. So, none of these cases involved a building inspection, nor did any of these cases involve the use of a consent form in the context of a search or inspection of a home. The Supreme Court, just this year, has reminded lower courts that when performing the qualified immunity analysis, the clearly established law must be defined. It must not be defined at a very high level of generality. It must be particularized to the facts of this case. The trial court erred in this case by defining the Fourth Amendment clearly established right at too high a level of generality. The contours of the right in this case are... Did the court give much discussion at all to the clearly established issue? There was not much discussion of the clearly established issue. Would you say the court addressed it? It was addressed, but in a cursory manner, it was not. They did not, for instance, find a similar case where a municipal building inspector had been held to violate the Fourth Amendment. And the Supreme Court in the White case, which was issued earlier this year, reminded courts that there has to be a similar case where a similar public official acting under similar circumstances has been held to violate the law. And in this case, there is no such case. All we have is the Appell case decided in 2007 where a colleague of Inspector Wallace's was operating under very similar circumstances and was held to have complied with the Fourth Amendment. So Mr. Wallace, on March 5, 2014, was simply not on notice that what he was doing could potentially be unlawful. And that's what the courts require with the qualified immunity analysis. Counsel, you're in your rebuttal. You can continue if you'd like, or you can reserve. Your Honor, I'll reserve my remaining time for rebuttal. Thank you. Mr. Schock? May it please the Court, my name is Beavis Schock. I represent the estate of Leon Walker and the Millbrook family. As you look at the case, Mr. Wallace keeps trying to shift us to this idea that he could go in if he wanted to and sort of didn't need the consent. That's how I read the case. But there's plenty of case law that says that an administrative warrant must be had. And there was no warrant here. It's undisputed there was no warrant. Instead, every single time they executed one of these SWAT raids and did a search on a house, they would call the building inspector and one would come over. In other words, there was no... and I would emphasize that the police officer admitted he had no knowledge of the building code and he had no knowledge of any problems in this house that related to the building's condition except the broken window, which he had just broken, or he and his team had just broken. So, if they're calling every time, every single time, and saying, sign the consent, if the consent is good, they can probably go in. But if they... the reason you get to the consent, the issue that you spoke about, Judge Kelly, is the consent good, is that they can't just go in. The nuisance exception, and this is in the City Code, Section 104.6, and it's pretty much what my opponent said. Nuisances, there's danger of fire, the building's about to fall down, that sort of thing. Now, I think they'd be then going with some kind of an emergency exception to the warrant requirement, which that's a different case. Counsel, this bill seems to be focused on the qualified immunity of the building inspector, not the police justification for the entry. But what did this individual know? What was he on notice to know was a constitutional violation? Where would there be knowledge to be attributed to him that his going in at the request of the police and seeking consent was going to violate the rights of the appellee here? I would draw the Court's attention to the Camara v. Muni Court, which we cite, and then the follow-up case is the Clifford case, both Supreme Court of the United States, which say that there is a warrant requirement for an administrative search. This is a building inspector who is making an administrative inspection. So those cases absolutely require a warrant. There is no... Consent. I'm sorry? Unless there's consent. Unless there's consent. This is a consent case. Exactly. Okay, so let's talk about that. Okay. So clear something up for me. As I understand it, Wallace said if you don't sign, you get put out of your house. Is that correct? That's exactly correct. He said we will immediately condemn the house, and so then you're out. So, and that was a true statement of the law? Well, no. It is not a true statement of the law if you believe that he had no right to go in and make the inspection. It's also not a true statement of the law because there was no situation requiring that house to be condemned. The house was in perfectly good shape. Under the ordinance, was that the procedure that was authorized? Oh, I see what you're saying, yes. But the ordinance, this 104.6, it's page 37 of our brief, talks about the idea that that only applies when there's a nuisance, and then nuisance is defined, as Judge Kelly said, as, let's see, fire hazard, serious threat to life, health or safety of the occupant, structure or portion of where the violations occur, of which there was none in this case. And there's also, not only was there none, Judge Arnold, Mr. Wallace, the building inspector, admitted that he knew of none. And he said, no, I don't know, when I go in on these Project 87s, I don't know what the condition is of the house at all. I just show up and tell the guy, sign the form, and if he signs it, I go in. And if he doesn't sign it, I tell him he's going to be thrown out, and they sign it. But our guy did sign it, and we assert it was under duress, which is a matter for the jury and why this court should affirm. When you say the matter of duress, what do you mean by that? Okay, so the duress falls into three parts. We have the handcuffing issue. Now, there are some cases that talk about handcuffing as not being dispositive, and that's why we said in our brief that that's not dispositive. Shydes, if I'm pronouncing it correctly, the case cited by both sides, talks about the totality of the circumstances, though. So we have the SWAT team, and we have the duress of the threat, which was false. Let me read you a portion of the ordinance, which I think may be relevant. If the owner or occupant of said building refuses to permit an inspection, the building official shall immediately condemn for occupancy the building or structure or portion thereof and issue an order to vacate. And that's in 104.4. But the beginning is that he has to have, above there, he has to have reasonable cause to believe that there exists in a structure a condition to, which is a condition contrary to or in violation of the code. Well, it says that within 48 hours of being notified by the police department that such condition exists. Yes, and they don't have that either, because the police, I'm sorry, sir, were you finished? The police what? The police had no knowledge. The police officer admitted his death. Did the police give him such a notice? No, sir. They were not? No, sir. Okay. I'd like to draw the court's attention to the Cross case just for a second. So this Appell case that my opponent cites was the district court case. It came up to this court under a different name, Cross v. Moqua. Cross v. Moqua, there were two different houses. I think the one, the second one, if they first went into Illinois, a house on the street called Illinois, and I don't think that's the important one. The second one is they went into Cherokee, and the person there said, same exact circumstances, sign the form, and the man said, well, what happens if I don't sign the form? And same sort of thing. He said, you have to sign the form, and the court denied qualified immunity, and that case went on. I don't know what the final outcome was. I'd like to draw the court's attention very briefly to the by dissent in that case. He repeated that administrative searches are absolutely subject to the warrant requirement. The Appell case, the district court had said, well, it's relaxed for administrative matters, but I think that is only in highly regulated industries, which this is not. And then this Bustamante case, it's, excuse me, Villamonte v. Marquez is an ocean vessel case, and it's kind of fun language in that case where they say, well, the first Congress allowed seagoing inspections without a warrant of seagoing vessels, and since the first Congress passed the Fourth Amendment, I guess it was all right. What if the only assertion of duress were this threat of, well, threat or statement that if you don't sign this consent form, we're going to condemn it and you'll have to go? None of the handcuffing, none of the SWAT team, nothing else. Would a claim based on that limited amount of duress be subject to qualified immunity? Would that be something that perhaps was not clearly established? I think the bumper case establishes that. The bumper case is the one where the lady lives at the end of the road, the Supreme Court of the United States. She lives at the end of the road. The police show up and say, we have a warrant to inspect your house, search your house, and they were being dishonest. They didn't have that warrant, and the Supreme Court of the United States said that that search was no good. So here, where there's this allegation of a threat to condemn when he doesn't have knowledge of any fact that means the house can be condemned. I mean, it's critical that he had no knowledge of any condition in the house that would cause it to be condemned. You didn't look at it and it was all sagging on one side or anything like that. He testified, correct, that he and his colleagues go out on these calls regularly. Every time. They think that they're adhering to the city ordinance and doing their job. Here's how I respond to that. Every citizen of the United States understands in their gut the sanctity of the home. Understands that you can't. We have that quote from William Pitt in our in our brief talking about the idea that the king can't go in the most small citizen society's home. This idea that Mr. Wallace could think, well, we go in every time, so it's OK, goes against the basic principle of the law. He is required to know this ordinance, and it says he has to have this nuisance notice, which he didn't have. Well, OK, then let's take it another step further. Let's say he does have information that there's a building code violation that could rise to the level of a nuisance. He asked the fellow to sign the consent. Guy says, well, I don't want to sign this. What's going to happen if I don't? And he says, well, I'm going to condemn it. And so he signs it and then he comes back and says that was coercive. You were going to kick me out if you didn't if I didn't sign it. Is that clearly established? I would say that's the cross case. And in that case, this court implied that it would be all right. It didn't finally answer that question. It in that case is sort of interesting. There was this. The inspector, McEnulty, relied on a Project 87 property nuisance form, but it had only been prepared 10 days ahead, even though it was the case of the condition of that house had been going on for years. And when the officer who had prepared that form was asked about in deposition, the officer took the Fifth Amendment and wouldn't answer questions. And so the opinion from this court said district court, you better better look into that a little bit. So there seemed to be an implication. This is this, quote, skepticism that the district court in this case talked about considerable skepticism. And I think that the the question is not wholly answered. It's not before this court in this case. But I mean, I would say that if the fully answer your directly answer your question, if the building inspector actually did have knowledge that the house was had had conditions that caused an immediate safety problem that. You could say, hey, you got to get out of here. I mean, the classic one would be where you look at the house and it's tilting and you think this place about to fall over. And we got to get the people out of here for the purpose of public safety. That's an emergency. I think that would step outside the warrant requirement. But none of that applies here. I would just note that the trial court did discuss the difference between the person who is signing the form and the conditions around the person, which was called the environment. So we concede that Mr. Victor Millbrook, he was sort of the family representative. He's he's a sophisticated young man. He has a very good job. And we don't assert that he was a scared way for anything. He was. So what how would you characterize and what would you state is the clearly established right violated that you are claiming occurred? Clearly established right is to have nobody enter your house without a warrant unless you are within an exception to the warrant requirement. The Cameron case and the Clifford case apply that to administrative searches like this one. That's the answer to your question, sir. Well, what what what is it? What is this in the record that would indicate that this gentleman knew that he didn't have consent that was sufficient to undermine the warrant requirement? The that's really the question. Everybody knows that general proposition of law. And the question, though, is in a qualified immunity, whether a person would know in the circumstances that that legal principle was being violated. The Chavez case talks about the totality of the circumstances. Because of the bumper case, which is the one I talked about with the lady at the end of the road where there was a false threat. Which that was considered enough to make the search bad. I think that meets my qualified immunity argument on the concern you have. The search could be bad and we could concede that. But that would that doesn't that doesn't conclude the inquiry with respect to qualified immunity. The question, of course, is whether a person in this gentleman's circumstances would have reason to know that it was bad. Right. Well, if I make a concede that the search was bad for purposes of qualified immunity. Right. So. When a person makes a false statement and says, I can throw you out of your house if you don't sign this form. It's knowingly false, I guess. And it is in this case because he had he's acknowledged in his deposition he had no knowledge of anything wrong with that house. Well, no, I mean, he may have he may have made a mistake of law. He may have thought he had that that that indeed what would happen despite what the law actually was. They may have been doing this with some regularity for all that I know. And that that may be your underlying case. In fact, that the case is still ongoing. Right. The main case. This little piece of it is up here. Right. Well, the judge actually rejected our argument that the our client said that there were no people going in and out of this house as a drug house. And those arguments were all rejected by the trial court, but not subject to appeal at this phase of the proceedings. I see my time has expired. If the court has no questions, I'd ask the court to affirm the district court. Thank you so much for hearing me today. Thank you, Mr. Shot. Miss Gap, Miss McGowan, your rebuttal. Mr. Shock has suggested that Inspector Wallace made a false statement when he informed the resident that he could take action pursuant to the ordinance and have the home condemned. If I'm sorry, I can't hear you. Can you speak up? Sure. Mr. Shock just suggested to the court that Inspector Wallace made a false statement when he said to the resident on March 5th, 2014, when he told Mr. Millbrooks that he had authority under the ordinance to condemn the house if inspection was not permitted. I just wanted to point out that Mr. Wallace is entitled to rely on the judgment of the police officers who called him to the Project 87 house. What exactly did the police, you say he's entitled to rely on the police, policeman's judgment of what? That there was a nuisance there? That there was a nuisance.  I believe it's not exactly clear from the record what was relayed over the dispatch. He got a notification. He got a notification that... This is part of the evidence. Is this part of the routine? Yes. That was typically the procedure that... You're saying that whatever the notice was, he thought that, I mean, there's reason to believe that he thought the law had been complied with and he indeed had this power. Correct. Okay. Correct, Your Honor. There's no clearly established law that requires that Building Inspector Wallace second-guess whether or not the police officers who were requesting him that day followed the policy and followed the ordinance correctly. Qualified immunity protects all but the incompetent and those who knowingly violate the law. Given the existence of the appellate case where the Eastern District of Missouri held that providing citizens with accurate information as to their rights does not invalidate their consent, even when that information is disconcerting. Mr. Wallace could not have been on notice on March 5th, 2014, that he was violating clearly established law. He fully believed that he had obtained the permission of Mr. Milbrooks and was compliant with the Fourth Amendment. I see that I've run out of time. I want to thank the court for your time. Thank you, counsel. The court wishes to thank counsel for both parties for your presence this morning in providing argument to the court. For the briefing which you've submitted, we will take the case under advisement.